## In re BUCHSBAUM.

(District Court, E. D. Pennsylvania. December 12, 1905.)

ALIENS—ALIENS RESIDENT IN UNITED STATES—RIGHT TO RE-ENTER.

An alien, who in good faith has acquired and maintains his residence in the United States, on his return from a temporary absence in a foreign country, is not an alien immigrant within the meaning of the immigration statutes, but has the right to leave and re-enter the United States with the same freedom as a resident who is also a citizen.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Aliens, § 105.]

Habeas Corpus.

David Phillips, for relator.
John C. Swartley, for Commissioner of Immigration.
N. Dubois Miller, for International Mercantile Marine Co.

J. B. McPHERSON, District Judge. The undisputed facts of this case are thus set forth in the petition for the writ:

"The petition of Isadore Buchsbaum respectfully represents:

"That he is a native of Austria, and emigrated to the United States, arriving in New York City, state of New York, on March 10, A. D. 1901, with his wife and family. That thereupon he took up a permanent residence with his wife and family in said city, and established himself in the window cleaning business, in which he still retains his interest. That from the time of his arrival in New York City until on or about April, A. D. 1905, he continuously resided in New York City with his family, pursuing his aforesaid business and acquiring extensive contractual property and rights. That on the 8th day of March, A. D. 1905, he declared his intention of becoming a citizen of the United States before the Circuit Court of the United States for the Southern District of New York.

"In the month of April, A. D. 1905, the petitioner took passage on the steamer Finland for Antwerp, and thither went to Galicia, Austria, for the purpose of settling an estate. Your petitioner, on leaving this country for said purpose, never intended to give up his rights which he had acquired in the United States, but went with the intention of returning as soon as his business was transacted. The petitioner's family, consisting of wife and two children, remained in New York and are still residing there.

"Your petitioner returned to the United States, arriving in Boston, as a passenger on the steamer Marquette, Red Star Line, on November 7, 1905. The United States Commissioner of Immigration at Boston refused him a landing, and on November 9, 1905, ordered his deportation, on the ground that he was afflicted with trachoma.

"Your petitioner avers that he was not given a lawful opportunity to appeal by the said Commissioner of Immigration and he was conveyed on board the steamer Marquette to Philadelphia, where he arrived on November 19, 1905, and he is now illegally restrained of his liberty and illegally held in custody by the respondent John J. S. Rodgers, Commissioner of Immigration, the International

Mercantile Marine Company, and P. F. Young of steamer Marquette, in the house of detention at No. 950 Swanson St., city of Philadelphia, state of Pennsylvania.

"Your petitioner avers that he is a resident of the city of New York, state of New York, United States of America, and that he never gave up said residence. That he was not afflicted with any disease when he left New York City, nor when he left Europe on his return trip to the United States, and, if he has any disease such as alleged, he must have contracted the same on board the steamer Marquette on his return to the United States."

Upon these facts, I am of the opinion that the relator is not subject to deportation. He is not an alien immigrant in the sense applied to those words by the act of 1903, but is a resident of the United States, who has made this country his home, and has the right to leave it on his business affairs and to return to it with the same freedom as residents who are also citizens, either by birth or naturalization. I lay no stress upon the fact that the relator has declared his intention to become a citizen, except as such declaration is relevant to the inquiry whether he is a bona fide resident of the country. After an alien has once become a resident he is entitled to the same liberty of movement enjoyed by residents and citizens alike; and, until he abandons his residence, he is no longer amenable to the excluding provisions of the immigration law. That law is intended to operate when the immigrant presents himself for the first time, but after he has passed the scrutiny of the inspectors and has been admitted he is then entitled to the rights and privileges of residents in the United States as long as he continues to be a member of this class. It is true that in one sense he is always an alien, until he becomes a citizen, although he may reside in this country for many years before he applies to be naturalized. But this is not the sense in which the word has been used in the statutes regulating immigration. In these statutes an alien immigrant is one who offers to take up his residence here, but has not yet carried out his desire. Such an immigrant must fulfill certain requirements or he will not be allowed to land; but, having been once admitted, and having once acquired a residence in good faith, he is not obliged to stay in the country until he becomes a citizen, at the risk of being excluded when he returns to his family or his home. There are many commercial travelers of foreign birth who are still aliens. It is impossible to suppose that the act of 1903 was intended to apply to such persons; but it does apply to them, and to all other persons of foreign birth who have not been naturalized, no matter how long they may have lived in the country, nor what their ties of business or family may be, if the construction contended for by the government be correct. I happen to know that the president of one of our most conspicuous institutions of learning retains his foreign citizenship for certain business reasons. He has been identified with the intellectual life of this country for two generations, and is widely known as a profound scholar, but he is an alien still, and must be inspected whenever he returns from a visit abroad, if the literal meaning of that word must prevail in every case.

But I need not discuss the subject further, since the question has already been decided in the second circuit by Judge Benedict and Judge Lacombe. In the first case, In re Panzara (D. C.) 51 Fed. 275, the point decided is thus stated in the syllabus:

"One who is a resident of the United States, though of foreign birth, and not naturalized, and who is returning from a visit to the country of his birth, is not an alien immigrant within the meaning of the laws regulating immigration."

To the same effect are In re Martorelli (C. C.) 63 Fed. 437, and In re Maiola (C. C.) 67 Fed. 114. The relator's counsel laid much stress upon In re Di Simone (D. C.) 108 Fed. 942, in which Judge Boarman, considers, inter alia, the effect of a declaration of intention upon the status of an alien's children; but, as the case was reversed upon admission of error (108 Fed. 991, 46 C. C. A. 689), although it is not known what the error was, since no opinion was filed by the Circuit Court of Appeals, I think it inadvisable to permit the opinion of the District Court to have any influence on the pending case.

Believing, therefore, that the relator is entitled to his liberty, it is ordered that he be discharged.