UNITED STATES v. NAKASHIMA.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1908.)

No. 1,447.

1. ALIENS—EXCLUSION—CONTAGIOUS DISEASES—RESIDENT ALIENS RETURNING.

Act Cong. March 3, 1903, c. 1012, § 2, 32 Stat. 1214, which provides for the exclusion of "aliens" afflicted with a dangerous contagious disease, substantially re-enacts a corresponding section of Act March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1295], except that it omits the clause "in accordance with existing acts regulating immigration other than those concerning Chinese laborers." The 1903 act contains full legislation, and amends and is a revision of prior laws on the subject of immigration. Section 9 provides a penalty for the importation of afflicted aliens. The 1891 act was uniformly held to apply to alien immigrants only, and not to affect rights of alien residents. Sections 12, 13, 17, and 20 of the 1903 act (32 Stat. 1216–1218), providing for the delivery by masters of vessels of lists of alien passengers, for the examination of such passengers, and for the deportation of aliens unlawfully in the United States, etc., refer to "aliens," rather than "alien immigrants," as used in an amended act. The title of the 1903 act is "An act to regulate the immigration of aliens," etc. *Held* that, since aliens have always been allowed to reside in the

United States and acquire property here, while retaining their citizenship abroad, and to return to the United States after a temporary absence, the phraseology of the 1903 act is insufficient to show an intent that it should apply to alien residents returning to the United States after a temporary absence.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 299–302; vol. 8, p. 7571.]

2. STATUTES—CONSTRUCTION—TITLE.

Though the title of an act may not be used to extend or restrain any positive provisions in the body thereof, it may be resorted to in a case of doubt to ascertain the meaning of the act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 288.]

3. ALIENS—EXCLUSION—CONTAGIOUS DISEASES—HABEAS CORPUS.

Act Cong. March 3, 1903, c. 1012, § 25, 32 Stat. 1220, gives boards of special inquiry authority to determine whether an alien who has been duly held shall be allowed to land, and provides that the decision of any two members of the board shall be final, but that an appeal may be taken therefrom to the Secretary of the Treasury, whose decision shall then be final. By Act Feb. 14, 1903, c. 552, § 4, 32 Stat. 826 [U. S. Comp. St. Supp. 1907, p. 86], the Secretary of Commerce and Labor succeeded to the powers, etc., of the Secretary of the Treasury relating to the immigration service. Section 10 of the first-named act (32 Stat. 1216) makes the decision of the board of special inquiry final as to the rejection of aliens afflicted with a dangerous contagious disease. An alien, returning to the United States after a temporary absence, was detained before a board, and the questions whether he was afflicted and whether he was one of the class of aliens referred to in section 2 (32 Stat. 1214), providing for the exclusion of aliens afflicted with a dangerous contagious disease, were presented for the board's determination. The board found he was afflicted, and ordered that he be deported, and the Secretary of Commerce and Labor dismissed the alien's appeal, holding that under section 10 no appeal could lie. *Held*, that the appeal was improperly dismissed, since the question whether he was an alien, within section 2, was presented for decision by the Secretary, and that a writ of habeas corpus lies to protect the alien's right to have such question so determined.

Appeal from the District Court of the United States for the Territory of Hawaii.

The appellee, in his petition for a writ of habeas corpus, alleged that he is a subject of the Emperor of Japan, but that he is, and has been for four years and more, a resident of the United States, having in May, 1902, come from the empire of Japan to the territory of Hawaii as an immigrant; that he resided in that territory for about 1½ years, working there as a drayman, and that while there he married; that from Hawaii he and his wife went to San José, in California, where he established a home for himself and wife, and where he remained working at his trade of bricklayer until November, 1904, when he was called upon to return to Japan to serve in the army, as he was a reserve soldier; that he left his wife in San José, went to Japan, served in the army of that empire through the war with Russia, and upon his discharge proceeded to return to his home in San José; that on his way he arrived in Honolulu, where he desired to stop en route to visit a brother and sister who resided there; that he has no other home or place of residence than at San José; that before departing for Japan, as aforesaid, he procured from the Japanese consul at San Francisco a certificate showing that he was a resident of San José, and that his intention was to return there and make his home there. These facts were not denied. In addition thereto an agreed statement of facts was made on the trial had upon the return to the writ, which was in substance as follows: That the appellee arrived at Honolulu on the steamship Kasato Maru, having sailed from Kobe on August 26, 1906; that in compliance with the act of Congress approved March 3, 1903, a manifest

of alien passengers was delivered to the United States immigration inspector at Honolulu, which manifest contained the name of the appellee and the statement that he was of Japanese nationality and that he had never before been in the United States; that thereafter the appellee was questioned by an immigration inspector at the port of Honolulu relative to the statements set forth in the manifest, whereupon he stated that his occupation was that of a laborer, and that he had been in San José in 1903 and 1904; that thereupon the manifest was amended accordingly; that on September 19, 1906, an examination of the physical and mental condition of the appellee was made by an officer of the United States Marine Hospital service, located at Honolulu, and upon the completion of such examination that officer certified in writing that the appellee was afflicted with a dangerous contagious disease, to wit, trachoma; that at that time there was at the port of Honolulu a duly appointed, qualified, and acting board of special inquiry, consisting of three persons, to which board the certificate of the medical officer was delivered, the board having been called together for the purpose of giving the appellee a hearing; that such hearing was had, and as the result thereof said board determined that the appellee was afflicted with a dangerous contagious disease, and ordered that he be deported to Japan; that on September 20, 1906, the appellee appealed from the decision of the board, and on October 8, 1906, the Secretary of the Department of Commerce and Labor of the United States dismissed the appeal, holding that no appeal was permissible. Upon the hearing on the return to the writ of habeas corpus the court below held that the provisions of Act Cong. March 3, 1903, c. 1012, 32 Stat. 1213, "An act to regulate the immigration of aliens into the United States," applied to alien immigrants only, and not to aliens domiciled in the United States who may have temporarily gone abroad and are returning thereto.

Robert W. Breckons, U. S. Atty.

Charles F. Clemons, for appellee.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge (after stating the facts as above). The question first presented is whether the appellee is of the class of aliens who are to be denied admission into the United States under Act March 3, 1903, c. 1012, 32 Stat. pt. 1, p. 1213, which excludes from admission all aliens who are afflicted with a dangerous contagious disease. That act is amendatory of Act March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294], which in its terms is amendatory of prior acts. The act of 1891 had uniformly been held to apply solely to alien immigrants, and not to affect the rights of alien residents. In re Panzara (D. C.) 51 Fed. 275; In re Martorelli (C. C.) 63 Fed. 437; In re Maiola (C. C.) 67 Fed. 114; In re Ota (D. C.) 96 Fed. 487; Moffitt v. United States, 128 Fed. 375, 63 C. C. A. 117. In the case last cited this court had occasion to construe section 10 of the act of March 3, 1891, requiring the deportation of all aliens who may unlawfully come into the United States, and in the opinion we said:

"This act clearly relates to immigration, and is leveled only against immigrants, although neither of these words is expressly mentioned in section 10 of the act."

It is true that the act of March 3, 1891, is in terms directed against all aliens, and does not, in section 2, which defines the classes of aliens to be excluded from admission, employ the word "immigrant" or "immigration"; nor does it employ those words in section 9, which im-

poses a penalty on any person or transportation company bringing to the United States any alien afflicted with a loathsome or dangerous contagious disease. If the act were unaffected by the prior legislation, of which it is amendatory, there might be ground for saying, from its inclusive language, that it is directed against all aliens coming into the United States; but aliens have always been allowed to reside in the United States and acquire property there, while at the same time maintaining their citizenship in the country from which they came, and their right to return to the United States, after having temporarily left the same with the intention to return, has always been recognized. It is not to be presumed that Congress intended to change the whole trend of its prior legislation in regard to alien residents, construed as that legislation had been by the courts, without expressing that intention in terms so clear as to leave no room for doubt. We find no such change of phraseology as to justify that conclusion. The act of March 3, 1903, is not only amendatory, but it is a revision and collocation of the prior laws. It is true that there is to be found a substitution of the word "alien" for "alien immigrant" in sections 12, 13, 17, and 20; but there is no such substitution of words in section 2, which is a substantial reenactment of the corresponding section of the act of 1891, with the exception that it omits the clause "in accordance with the existing acts regulating immigration other than those concerning Chinese laborers." But the omission of that clause does not seem to us of significance as indicating a change of policy, for the act of 1903 contains in itself full legislation on the subject with which it deals, and there was no occasion to refer to existing acts regulating immigration.

The title of the act, while it may not be used to extend or restrain any positive provisions found in the body of the act, may be resorted to in a case of doubt for the purpose of ascertaining its meaning. Old Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Coosaw Mining Co. v. South Carolina, 144 U. S. 550, 12 Sup. Ct. 689, 36 L. Ed. 537. The title of the act of March 3, 1903, is "An act to regulate the immigration of aliens into the United States." That it is directed against alien immigrants, and not against alien residents, has been decided in the following cases: In re Buchsbaum (D. C.) 141 Fed. 221; United States v. Aultman & Co. (D. C.) 143 Fed. 922; Rodgers v. United States, 152 Fed. 346, 81 C. C. A. 454. Our attention has been directed to the case of Taylor v. United States, 152 Fed. 1, 81 C. C. A. 197, in which the majority of the Circuit Court of Appeals for the Second Circuit found in the changes incorporated in the act of 1903 evidence of the intention of Congress to amend the act in the direction of more drastic exclusion and to discard the term "alien immigrant" for the broader term "alien," and found evidence of that intention also in the reports of committees and in the debates of Congress while the act was on its passage. In United States v. Union Pacific R. R. Co., 91 U. S. 72, 23 L. Ed. 224, the court said:

"In construing an act of Congress we are not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against its passage. The act itself speaks the will of Congress, and this is to be ascertained from the language used. But courts, in construing a statute, may with propriety recur to the history

of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it."

And in Binns v. United States, 194 U. S. 486, 24 Sup. Ct. 816, 48 L. Ed. 1087, the court held that, while it was generally true that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body, it was proper to examine the reports of committees of either branch of Congress with a view to determine the scope of statutes passed on the strength of such reports. In the reports of the committees we discover no evidence sufficient to show that Congress intended, by the act of 1903, to make a radical change in the existing law; and, as the decision in Taylor v. United States has been reversed by the Supreme Court of the United States in the recent case of United States v. Taylor, we may infer that the latter court found in these documents no evidence of such an intention.

A second question concerns the finality of the decision of the board of special inquiry. Section 25 of the act of 1903 gives to such boards authority to determine whether an alien who has been duly held shall be allowed to land or be deported, and provides as follows:

"The decision of any two members of a board shall prevail and be final, but either the alien or any dissenting member of said board may appeal through the Commissioner of Immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of the Treasury, whose decision shall then be final; and the taking of such appeal shall operate to stay any action in regard to the final disposition of the alien whose case is so appealed until the receipt by the Commissioner of Immigration at the port of arrival of such decision."

There was an appeal in the present case to the Secretary of Commerce and Labor, who, under the Act Feb. 14, 1903, c. 552, § 4, 32 Stat. 826 [U. S. Comp. St. Supp. 1907, p. 86], succeeded to the powers, duties, and functions of the Secretary of the Treasury relating to the immigration service at large. The appeal was dismissed on the ground that the appellee herein was not entitled to an appeal, since section 10 of the act of March 3, 1903, provides that the decision of the board of special inquiry shall be final as to the rejection of aliens afflicted with a loathsome or with a dangerous contagious disease. The appeal could have been dismissed only on the theory that there was but one question before the board of special inquiry, and that was whether the alien referred to in the certificate of the medical officer was afflicted with a loathsome or a dangerous contagious disease. But the decision of the board was not based solely on the certificate of the medical officer. There was another question involved in its decision and presented on the appeal, and that was whether or not the appellee was one of the class of aliens referred to in the statute. Upon that question evidence had been taken before the immigration officers at Honolulu; for from the record it appears that the appellee claimed to those officers that he had resided in San José, Cal., in the years 1903 and 1904, had returned to Japan for the purpose of participating in the war, had returned therefrom, landing at Honolulu on his way to San José, Cal., where he claimed to have living his wife and child, or

children, and that he was sworn and examined with relation to such residence and intention.

While the statute declares that the decision of the board shall be final, it allows an appeal, and provides that the decision on appeal shall be final. In the present case the dismissal of the appeal was a denial of the right of appeal to the appellee herein. That right having been denied, we find in the record no final decision. If the Secretary of Commerce had entertained the appeal, and had affirmed the decision of the board, a different question would be presented. Lem Moon Sing v. United States, 158 U. S. 540, 15 Sup. Ct. 967, 39 L. Ed. 1082; In re Moses (C. C.) 83 Fed. 995; In re Ota (D. C.) 96 Fed. 487. In the last case cited Judge De Haven, referring to the act of August 18, 1894, said:

"Under this statute, when the executive officers of the government, upon a hearing such as is contemplated by the law, have decided that an alien is not entitled to enter the United States, the courts are without jurisdiction to review that determination upon questions either of law or fact. The finding of these officers that an alien seeking to land is an immigrant is as conclusive upon the court, in a proceeding like this, as their finding in relation to any other fact affecting the right of the alien to land."

We are of the opinion that section 25 of the act of 1903 does not exclude jurisdiction of courts in habeas corpus proceedings, where the alien is denied the right of appeal upon a question affecting his right to land, and upon which he is entitled to be heard. In re Monaco (C. C.) 86 Fed. 117; Rodgers v. United States, 152 Fed. 346, 81 C. C. A. 454; Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317. In the case last cited, Isabella Gonzales, a citizen and native of Porto Rico, on arriving at a port of the United States, was detained for deportation by a Commissioner of Immigration on the ground that she was an alien to be excluded within the meaning of the act of March 3, 1891. The court said:

"If she was not an alien immigrant within the intent and meaning of Act Cong. * * * March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294], the commissioner had no power to detain or deport her, and the final order of the Circuit Court must be reversed. * * * And in the present case, as Gonzales did not come within the Act of 1891, the commissioner had no jurisdiction to detain and deport her by deciding a mere question of law to the contrary, and she was not obliged to resort to the superintendent or to the Secretary."

The judgment is affirmed.