FRICK, Immigration Inspector, v. LEWIS.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

No. 2,200.

1. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION—REVIEW BY COURTS.

Where there is no evidence to support a charge that an alien is unlawfully in the United States, the Department of Commerce and Labor cannot rightfully issue a warrant of deportation, but where a fair, though summary, hearing has been given in ascertaining whether there is or is not any proof tending to sustain the charge, it is not open to the courts to consider either admissibility or weight of proof, and they cannot interfere if anything was offered that tends, though slightly, to sustain the charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

2. ALIENS (§ 53*)—RIGHT OF DEPORTATION—ENTRY IN VIOLATION OF LAW—EFFECT OF PREVIOUS RESIDENCE IN UNITED STATES.

Under Immigration Act Feb. 20, 1907, c. 1134, §§ 2, 21, 34 Stat. 898, 905 (U. S. Comp. St. Supp. 1909, pp. 448, 459), which excludes certain classes of aliens, and vests power in the Secretary of Commerce and Labor to deport an alien who has been found here in violation of the act within the period of three years after landing or entry, the fact that an alien entering has been a resident of the United States for a number of years, and had declared his intention to become a citizen, and that he left the country for a temporary purpose, is immaterial; the statute being applicable so long as he remains an alien, and the legality of the last entry is to be determined as though there had been no previous entry, with the right to deport within three years thereafter.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

3. ALIENS (§ 53*)—RIGHT OF DEPORTATION—IMPORTATION OF WOMEN FOR IMMORAL PURPOSES—CONSTRUCTION OF STATUTE.

Immigration Act Feb. 20, 1907, c. 1134, §§ 2, 21, 34 Stat. 898, 905 (U. S. Comp. St. Supp. 1909, pp. 448, 459), exclude from entry any alien who shall procure or attempt to bring in prostitutes or women or girls for immoral purposes, and authorize the Secretary of Commerce and Labor to deport any alien who has been found here in violation of the act within three years after landing or entry, such fact to be determined by him. Section 3, as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264, makes it a felony for any person to import an alien for the purpose of prostitution or any immoral purpose and provides that any "alien" who shall be convicted thereunder shall at the expiration of his sentence be deported. *Held*, that such provisions create two distinct remedies, under either of which the right to deport may be exercised, and that a conviction under section 3 as amended is not a condition precedent to the right of the Secretary to deport under section 21, nor is an acquittal in such a prosecution a bar to deportation thereunder.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

4. ALIENS (§ 53*) — DEPORTATION — CONSTRUCTION OF STATUTE — "COUNTRY WHENCE HE CAME."

The provisions of Immigration Act Feb. 20, 1907, c. 1134, §§ 20, 21, 34 Stat. 904, 905 (U. S. Comp. St. Supp. 1909, p. 459), authorizing the Secretary of Commerce and Labor to deport any alien entering or found in the United States in violation of the act "to the country whence he came," were intended to refer to the place of his nativity or citizenship, and not to the country from which he may have immediately entered the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 2, p. 1653.]

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Michigan.

Petition by Samuel Lewis for a writ of habeas corpus against G. Oliver Frick, United States Immigration Inspector. Order for discharge of petitioner, and respondent appeals. Reversed.

This appeal is from a judgment in habeas corpus holding a warrant for deportation to be void. It was agreed in the court below that the facts of the case might be considered as they are stated in the opinion. The opinion shows (189 Fed. 146) that on November 17, 1910, Lewis "went across the river, from Detroit to Windsor, remained not more than an hour or so, and brought back with him, into the United States, a woman claimed to be his wife. On this occasion he made to the immigration officers a statement as to the

woman and her recent history, some part of which statement was concededly untrue. In December following he was indicted by the grand jury for violation of section 3 of the immigration law, * * * the sole charge being that in bringing this woman across the river on November 17th she was by him imported for an immoral purpose. This indictment duly came on to be tried in the District Court of this district, and on March 23, 1911, the trial jury rendered a verdict of not guilty. The issue was whether the woman was in fact, or was believed to be, his lawful wife. On November 24, 1910, he was arrested by an immigrant inspector upon a warrant of arrest issued by the Department of Commerce and Labor, specifying, as its moving causes (1) that he had been convicted of or admitted having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entering the United States; (2) that he had brought into the United States a woman for immoral purposes; (3) that at the time of his entry (November 17, 1910) he was likely to become a public charge; and (4) that he entered without inspection, and hence was unlawfully in the country. Certain hearings and examinations were held before the inspectors. * * * What I understand to be a complete file copy of the department proceedings does not show any formal finding by the department upon the charges made, but that is, probably, not material, because on February 14, 1911, the Secretary of Commerce and Labor issued his warrant of deportation, reciting that, after due hearing, he had become satisfied that Lewis, who landed at Detroit, Mich., from Canada, November 17, 1910, was in this country in violation of the immigration law as amended March 26, 1910, in this, to wit: 'That the said alien was a member of the excluded classes, in that he has been convicted of and admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States; that he procured, imported, and brought into the United States a woman for an immoral purpose; that at the time of his entry into the United States he was a person likely to become a public charge; and that he is unlawfully within the United States, in that he secured admission by false and misleading statements thereby entering without the inspection contemplated by law; and may be, deported in accordance therewith.' Thereupon, the warrant directed that he be taken to New York and be from there deported to Russia."

After alluding to a stay directed by the department pending proceedings under the indictment and also to a further stay for ten days to enable Lewis "to submit additional information," the trial judge said: "Lewis, by his attorney, submitted to the department, at Washington, a showing that he had been acquitted on the indictment, and also some character evidence, April 13th, and it is to be assumed after this additional showing the Secretary withdrew the stay, and directed Mr. Frick (the inspector) to execute the warrant immediately."

J. E. Bland, Asst. U. S. Atty. (Frank H. Watson, U. S. Atty., on the brief), for appellant.

H. P. Wilson and G. W. Moore (Florian, Moore & Wilson, on the brief), for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The right of deportation was denied on the ground that the department was without jurisdiction. The controlling reasons for so holding were (1) that all the charges except the one concerning the woman depended upon the charge that Lewis' entrance into the United States was on November 17, 1910, while the court was of opinion that since his first entrance occurred September 20, 1904, the three years' clause of the act of Congress began to run at that time and so the period for deportation had expired at the date of the Detroit entrance; (2) that,

as the act of importing and bringing into the United States a woman for immoral purposes is denounced by the act as a felony, Lewis must be convicted of the felony before he can be deported on that charge.

[1] The court believed that there was no evidence tending to support any of the charges, except the one concerning the woman. Where there is nothing to support a charge, we agree that the department cannot rightfully issue a warrant to deport; for that would be a clear abuse of power. But, where a fair though summary hearing has been given, in ascertaining whether there is or is not any proof tending to sustain a charge involved in a case like this, it is not open to courts to consider either admissibility or weight of proof according to the ordinary rules of evidence (Lee Lung v. Patterson, 186 U. S. 176, 22 Sup. Ct. 795, 46 L. Ed. 1108), even if it believe the proof was insufficient and the conclusion wrong. The question is whether anything was offered that tends, though slightly, to sustain the charge. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. As Mr. Justice Holmes said in Chin Yow v. United States, 208 U. S. 13, 28 Sup. Ct. 203, 52 L. Ed. 369:

"But, unless and until it is proved to the satisfaction of the judge that a hearing properly so called was denied, the merits of the case are not open, and, we may add, the denial of a hearing cannot be established by proving that the decision was wrong."

It is true that in both of the cases last cited the court was dealing with a question of exclusion of an alien, where by the act in question the decision of the executive officer was made final, but we think the rules there laid down, as well as those in Lee Lung v. Patterson, supra, are in principle applicable here. Section 25, Act Feb. 20, 1907, 34 Stat. 907; Joint Res. No. 34, 33 Stat. 591. We are confirmed in this view by the decision in Bates & Guild Co. v. Payne, 194 U. S. 106, 109, 24 Sup. Ct. 595, 597 (48 L. Ed. 894), where an order of the Postmaster General was under review on appeal in an equity case, and not as here in a habeas corpus proceeding. Justice Brown said:

"The rule upon this subject may be summarized as follows: That, where a decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing."

When we consider the complicated duties devolved upon the department and the objects sought to be accomplished by their proper discharge, viz., the ascertainment of conditions requiring particular aliens to be deported, we are convinced that it is not open to us to examine, according to technical tests, into the sufficiency of matters regarded by the Secretary of Commerce as proof. Thus interpreting the record, we cannot say that it contains nothing tending to support any of the charges other than the one concerning the woman; and of the latter the court said:

"So far as concerns the main question of fact into which the department undertook to examine, viz., the importing of the woman, I do not see suffi-

cient ground for these complaints, and, if the department had jurisdiction, under the existing circumstances, to hear and determine this question of fact and to deport upon that ground, I should not undertake to review its conclusion."

[2] We may now consider the grounds stated, upon which the learned trial judge allowed the writ. Section 2 of the act as amended March 26, 1910 (36 U. S. Stat. L. 263, 264), defines certain classes of aliens, who "shall be excluded from admission into the United States." Among these classes are (1) persons likely to become a public charge; (2) persons who have been convicted of, or who admit having committed, a felony or other crime or misdemeanor involving moral turpitude (prior, of course, to entry into the United States); (3) "persons who procure or attempt to bring in prostitutes or women or girls for the purpose of prostitution or for any other immoral purpose." Section 21 of the act (34 Stat. L. 905) vests power in the Secretary of Commerce and Labor to deport an alien who has been found here "in violation of this act * * * within the period of three years after landing or entry," and return him "to the country whence he came." Section 3 as amended March 26, 1910, provides that "whoever shall, directly or indirectly, import * * * into the United States, any alien for the purpose of prostitution or for any other immoral purpose" is guilty of a felony.

Was the period of three years, mentioned in section 21, applicable in this case to Lewis' entry into Detroit, or only to his original entry into New York? It must be conceded that there is a diversity of judicial opinions upon the subject of temporary absence of an alien from this country and his re-entry. The difficulty, of course, arises through varying interpretations of acts of Congress; for the question is one of legislative intent. The power of Congress to prohibit a second or later entrance of aliens and the power originally to exclude them are derived from the same source, and are but "parts of one and the same power." Fong Yue Ting v. United States, 149 U. S. 713, 13 Sup. Ct. 1022, 37 L. Ed. 905. Illustrations of the exercise of the power to prevent and to permit re-entry may be found in the Chinese Exclusion Case, 130 U. S. 603, 604, 9 Sup. Ct. 623, 32 L. Ed. 1068, and Lau Ow Bew v. United States, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; the first being based upon an act disclosing an intent to forbid return and the other upon an act showing a purpose to permit return.

One contention is that Lewis had been a domiciled resident here for more than three years prior to his entrance into Detroit, and that this entitled him temporarily to leave the country and re-enter without regard to the provisions defining the excluded classes. True he had in May, 1906, declared his intention to become a citizen of the United States; but he was still an alien at the time of his re-entry. City of Minneapolis v. Reum, 56 Fed. 576, 6 C. C. A. 31 (C. C. A. 8th Cir.); In re Kleibs (C. C.) 128 Fed. 656; In re Moses (C. C.) 83 Fed. 995; Maloy v. Duden (C. C.) 25 Fed. 673; Wallenburg v. Missouri Pac. Ry. Co. (C. C.) 159 Fed. 217; In re Polsson (C. C.) 159 Fed. 283.

In Lem Moon Sing v. United States, 158 U. S. 538, 547, 15 Sup.

Ct. 967, 970 (39 L. Ed. 1082), when speaking of the re-entry of a domiciled alien, Justice Harlan said:

"Is a statute passed in execution of that power (to exclude aliens) any less applicable to an alien, who has acquired a commercial domicile within the United States, but who, having voluntarily left the country, although for a temporary purpose, claims the right under some law or treaty to re-enter it? We think not. The words of the statute are broad and include 'every case' of an alien, at least every Chinese alien, who, at the time of its passage, is out of this country, no matter for what reason, and seeks to come back. He is none the less an alien because of his having a commercial domicile in this country."

True, the decision was limited to the question whether appellant had been constitutionally committed to officers of the executive department for final determination (158 U. S. 550, 15 Sup. Ct. 972, 39 L. Ed. 1082), but the judgment below denying an application for a writ of habeas corpus was affirmed; and we regard the decision as applicable alike to the questions respecting domicile, and legislative intent touching the present use of the word "alien."

Now, as to the Windsor-Detroit entry, it is safe to say that, according to the present trend of decision of the federal Courts of Appeals, the entry was within the purview of section 2 of the amended act. See Ex parte Hoffman, 179 Fed. 839, 103 C. C. A. 327 (C. C. A. 2d Cir.), which was based on the earlier decision of the same court in Taylor v. United States, 152 Fed. 1, 4, 81 C. C. A. 197. In our opinion it was not meant by the reversal of the Taylor Case to change the conclusion there reached in the majority opinion as to aliens re-entering this country with apparent intent to remain. 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130. See, also, Sibray v. United States, 185 Fed. 401, 402, 107 C. C. A. 483 (C. C. A. 3d Cir.); United States v. Sprung, 187 Fed. 903, 905, 906, 110 C. C. A. 37 (C. C. A. 4th Cir.); Prentis v. Petros Stathakos, 192 Fed. 469, decided July, 1911 (C. C. A. 7th Cir.). The decisions in Redfern v. Halpert, 186 Fed. 150, 108 C. C. A. 262 (C. C. A. 5th Cir.), and United States v. Nakashima, 160 Fed. 842, 87 C. C. A. 646 (C. C. A. 9th Cir.) are to the contrary.

The decision of this court in United States v. Aultman Co., 148 Fed. 1022, 79 C. C. A. 457, affirming the judgment of the court below (143 Fed. 922), is not applicable. That was a prosecution for alleged violation of the law, which forbade and denounced with penalties any encouragement, through solicitation, promise, or agreement, of the importation or immigration of aliens for the purpose of performing labor in this country. No question of deportation was involved. The marked difference to be observed between that case and this is that there the action was against the company to recover the penalty inflicted for inducing an alien to come here, while this is a proceeding to deport an alien. The statute there considered disclosed an intent to protect American labor against foreign pauper labor, and the act of the Aultman Company was regarded under all the circumstances as not falling within the intention of the law. We think it plain that the learned judges taking part in the case—the judge deciding it below and the judges affirming it alone upon his opinion— could not have thought it necessary even to consider the question with

which we are now concerned. See United States v. Williams (D. C.) 183 Fed. 905.

In view of the changes made in the statutes and the ends sought to be accomplished under them—which, for example, are so clearly and cogently stated by Judge Lacombe in Taylor v. United States and Ex parte Hoffman—we are constrained to believe that those decisions and their class, when applied to the present statute, more certainly and completely effectuate the intention of Congress than the two opposing decisions do. The power and duty vested in the department to exclude and to deport objectionable aliens are in their nature continuing. The only limitation stated is that deportation shall take place within three years. This is plainly meant to enable the officials to determine the fitness of aliens admitted. Aliens of fitness may, however, leave the country and return later in a condition and under circumstances that would obviously present the very evils which the act was passed to remedy. Such new conditions and new entry as clearly fall within the letter and purpose of the enactment as the same conditions and an original entry admittedly do.

It is true that to apply to the present case the rule laid down in the majority decisions is, as respects the time of Lewis' absence, to subject the rule to a severe test. Lewis was in Windsor only about an hour; but, unless we decline to recognize the charges contained in the warrant of deportation, we must hold that, when Lewis re-entered Detroit, he was engaged in the execution of a scheme that was plainly violative of the alien act. He was not returning from the discharge of a temporary and lawful errand; and, having no such question as that before us, we do not pass upon it. If we yield then to the mere duration of Lewis' absence, we must grant to that feature greater importance than we do to the conditions attending his re-entry and to the intention of the law itself.

It is to be observed that under section 21 the Secretary's power to deport is in terms vested when he is satisfied that an alien is here "in violation of this act." It needs only to be stated that, if we are right in believing (upon the charges) that section 2 is applicable, Lewis' re-entry and his remaining here were "in violation of this act." Haw Moy v. North, 183 Fed. 91, 105 C. C. A. 381 (C. C. A. 9th Cir.); Ex parte Avakian (D. C.) 188 Fed. 690; Ex parte Kaprielian (D. C.) 188 Fed. 694; Williams v. United States, 186 Fed. 479, 481, 108 C. C. A. 457 (C. C. A. 2d Cir.). See, also, the Japanese Immigrant Case, 189 U. S. 86, 99, 23 Sup. Ct. 611, 47 L. Ed. 721; Turner v. Williams, 194 U. S. 281, 290, 24 Sup. Ct. 719, 48 L. Ed. 979.

[3] It remains to consider whether the power to deport under sections 2 and 21 just passed upon is affected by anything contained in section 3. The case (Wong You v. United States, 181 Fed. 313, 104 C. C. A. 535) relied on in the court below in connection with the holding that a conviction of Lewis under section 3 was a condition precedent to the right to deport him was reversed by the Supreme Court, January 22, 1912. 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. ——. After stating in the decision of reversal that the court below had "made a mistaken use of its principles of interpretation," the Supreme Court decided that, where provision is made in each of two acts of

Congress for excluding aliens, the right to exclude may be exercised under the later act. Aside from the rule of re-entry before considered, we regard this as decisive of the existence of the power to deport under sections 2 and 21, irrespective of section 3; for the rule of that decision is clearly equivalent to holding that the provisions of either act there considered might have been resorted to for the purpose of exclusion, and so clears the way to inquire into the real scope and effect of section 3.

We are convinced that the right to deport in this case may be found also in section 3 in connection with section 21, without regard to conviction or acquittal under section 3 alone. Obviously no difference in principle can arise from the fact that two courses are open in the same act, instead of being found in two acts.

Besides, section 2 in terms is limited to aliens and section 3 is not. For example, the first clause of section 3 by general language forbids "importation" of any alien for the purpose of prostitution or other immoral purpose; and the next clause—the one corresponding to a clause of section 2—provides that "whoever shall * * * import or attempt to import * * * any alien for the purpose of prostitution or for any other immoral purpose" may be punished. Clearly a citizen as well as an alien is embraced within this language. This is fortified by a later clause of the section; for, while the forbidden acts are denounced and punished as felonies, yet the distinction between citizen and alien is consistently carried out in the last clause, which provides that "any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence" be deported. It follows, we think, that the fact that two corresponding clauses are found in sections 2 and 3 plainly signifies an intent (in connection with section 21) to create and maintain two distinct remedies under which the right to deport may be exercised.

The judgment of acquittal of Lewis under the indictment returned is not res adjudicata of the present proceeding. Williams v. United States, 186 Fed. 479, 481, 108 C. C. A. 457 (C. C. A. 2d Cir.). Alluding to the charge relating to the woman, the learned trial judge said:

"The jury found Lewis not guilty. From my familiarity with the evidence, I can say I think the evidence, as fully developed on the trial (it being, in a substantial way, the same as the evidence before the department) justified a strong suspicion that Lewis was guilty, but did not justify a conviction under the rules of criminal law. The case is one where the courts could not review the conclusion of the department, if the department has jurisdiction to hear such question at all."

It results that the right to deport in virtue of section 21 is also applicable under section 3. For one of the charges made by the Secretary of Commerce and found to be true in the warrant to deport is that Lewis "imported and brought into the United States a woman for an immoral purpose," and this is expressly "forbidden" by the first clause of section 3.

[4] Turning to the warrant to deport, it states that Lewis shall be returned to Russia, not to Canada. Sections 20 and 21 each provide for return "to the country whence he came." In United States v.

Redfern (C. C.) 186 Fed. 603, 604, a native of Spain, who was then a citizen of the Republic of Panama, was held under a warrant ordering his deportation to Spain. It was decided that the Secretary had "no discretion whatever in the matter, and any warrant that attempts to exercise such discretion is necessarily illegal and void," and the writ of habeas corpus was made absolute for that reason. In United States v. Williams (D. C.) 187 Fed. 470, 471, a person who came to this country from Holland was arrested on his return from Canada and held under a warrant to deport him to Austria, and the writ was dismissed on the ground that the detention was legal and the court had no jurisdiction to direct the Secretary to send him to Canada. We are thus required to ascertain the statutory intent of the words "returned to the country whence he came." Under section 3 an alien whose sentence has expired may be "returned to the country whence he came, or of which he is a subject or a citizen." This is the latest expression of the legislative intent in this regard. Section 3 also provides for the deportation of another class of aliens "in the manner provided by sections 20 and 21 of this act." It is difficult to perceive the reason for this difference in language, unless it was the intention of Congress to invest the Secretary in all cases with the discretion given to him by section 3; for aliens subject to deportation may frequently have come here from a country other than the one of their nativity or citizenship, no matter into what clause of the act their cases may fall. Without considering this, however, we think the history of the words contained in sections 20 and 21—as respects their relations to the other portions of the original act and the amendments thereto—shows that the words "returned to the country whence he came" were intended to refer to the place of nativity or citizenship. In the absence of provision or change of provision clearly indicating a different intent, it hardly can be said that it was the legislative purpose otherwise to deport objectionable aliens. This meaning should be ascribed to the words now.

The judgment of the court below must be reversed, and appellee remanded to the custody of appellant.