### UNITED STATES ex rel. BAUDER v. UHL et al.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

#### No. 177.

1. ALIENS (§ 53*)—DEPORTATION—GROUNDS—ENTRY IN VIOLATION OF LAW.
    Under section 2 of the Immigration Act of Feb. 20, 1907, c. 1134, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, § 1, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 500), and Act March 4, 1913, c. 141, 37 Stat. 737, providing for the exclusion of aliens who procure or attempt to bring in women for any immoral purpose, and section 20, which provides that any alien entering the United States in violation of law shall upon the warrant of the Secretary of Labor be deported at any time within three years, where an alien was excluded after a finding by a Board of Special Inquiry confirmed by the Secretary of Labor that he was attempting to bring in a woman for an immoral purpose, and thereafter returned to the United States and was duly admitted without such finding having been reversed, his entry was in violation of law and he could be deported.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

2. ALIENS (§ 53*)—DEPORTATION—"ALIEN."
    An alien does not cease to be an alien by declaring his intention to become a citizen and taking out his "first papers," but remains such until naturalization is complete, within section 20 of the Immigration Act of Feb. 20, 1907, c. 1134, 34 Stat. 904 (U. S. Comp. St. Supp. 1911, p. 511), authorizing the deportation of aliens within three years.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*
    For other definitions, see Words and Phrases, vol. 1, pp. 302–306; vol. 8, p. 7571.]

3. ALIENS (§ 53*)—DEPORTATION—TIME FOR PROCEEDING.
    Under Immigration Act Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904 (U. S. Comp. St. Supp. 1911, p. 511), authorizing the deportation at any time within three years of any alien entering the United States in violation of law, where an alien was excluded for attempting to bring in a woman for an immoral purpose and thereafter returned to the United States and was admitted and subsequently made a business trip abroad, he could be deported within three years from the time of his return from such trip.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

4. ALIENS (§ 54*)—DEPORTATION—REVIEW OF DEPARTMENTAL DECISION.
    Under such section a departmental warrant of deportation cannot be rightfully issued without some evidence to support it; but, if there is a

---

proper hearing and any evidence to sustain the charge, the decision of the Secretary of Labor as to the weight of the proof must be accepted by the courts as conclusive.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 46*)—DEPORTATION—GROUNDS.

Under such section intended concubinage is a ground of exclusion, though not a crime under the laws of the United States, the laws of the particular state, or the laws of the country from which the aliens come.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

6. ALIENS (§ 54*)—DEPORTATION—WARRANT OF ARREST.

The warrant of arrest for the deportation of an alien need not have the formality and particularity of an indictment, but must give the alien sufficient information of the acts relied on to bring him within the excluded classes to enable him to offer testimony in refutation at the hearing.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

7. ALIENS (§ 54*)—DEPORTATION—WARRANT OF ARREST.

Irregularities in the order of arrest do not affect the status of an alien held upon a warrant of deportation after a fair hearing, nor does the fact that the warrant of deportation is based in part upon a charge not stated in the warrant of arrest.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on relation of Hans Bauder, against Byron H. Uhl, Acting Commissioner of Immigration at the Port of New York, and others. From an order dismissing the writ, the relator appeals. Affirmed.

McLaughlin, Russell, Coe & Sprague, of New York City (Rufus W. Sprague, Jr., and Charles B. Alling, both of New York City, of counsel), for appellant.

H. Snowden Marshall, U. S. Atty., of New York City, and Kenneth M. Spence, Asst. U. S. Atty., of New York City.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This is an inquiry concerning the proposed deportation of the relator under the Immigration Act of February 20, 1907, as amended by the acts of March 26, 1910, and March 4, 1913. The case comes here on an appeal from an order dismissing a writ of habeas corpus. The relator is a citizen of Switzerland who has for some time had his domicile in the city of Chicago.

[1] Section 2 of the act provides that certain specified classes of aliens shall be excluded from admission into the United States. Among the excluded classes are "persons who procure or attempt to bring in prostitutes or women or girls for the purpose of prostitution or for any other immoral purpose."

It appears that in June, 1910, the relator attempted to enter the United States, but was detained by the immigration officials at Ellis

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Island and a hearing was had before a Board of Special Inquiry, which board made a finding that he was attempting to bring a woman into the country for an immoral purpose and he and the woman were ordered deported. The order was carried into effect. After his deportation the relator almost immediately returned under his right name to the United States arriving at New York on July 12, 1910, on the Kronprinzessin Cecilie of the North German Lloyd Line, and was duly admitted. In 1911 he made a business trip abroad returning again under his own name and without any disguise in August, coming in at the Port of New York as a first class passenger on the Kaiserin Augusta Victoria. In the early part of the year 1913 the Immigration Inspector at Chicago in a letter to the Commissioner General at Washington suggested his deportation. About that time the Swiss government was trying to have the relator extradited for alleged fraudulent sales of mining stock in Switzerland. The extradition proceeding failed, the United States Commissioner at the close of a hearing lasting several weeks found that the charges were not supported by the evidence and that there was no probable cause shown that a crime had been committed. The extradition proceeding having failed the immigration authorities caused the arrest of the relator on a warrant of the Department of Labor dated March 7, 1913, but not acted on until the middle of July when the arrest was made and relator was brought from Chicago to New York for deportation. Thereupon a writ of habeas corpus was issued by the United States District Court for the Southern District of New York to review the deportation order. On September 30th an order was entered dismissing the writ and was taken to this court.

Section 20 of the act provides:

"That any alien who shall enter the United States in violation of law, and such as become public charges .from causes existing prior to landing, shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years," etc.

Section 21 provides:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came". etc.

It thus appears that what the government is now attempting is not the exclusion but the deportation of the relator under section 20 of the act. And in order that the government may have the right to deport him he must have entered the United States "in violation of law." The government alleges that he entered in violation of law because at the time he was admitted he belonged to one of the excluded classes under section 2, as his admission in June, 1910, had been refused under the finding of the Board of Special Inquiry confirmed by the Secretary of Labor that he was attempting at that time to bring in a woman for an immoral purpose. The relator contends that the statute is not to be construed to mean that a person who has once been refused admission because at the time under a disability imposed by the stat-

ute is forever thereafter to be regarded as belonging to the excluded classes so that if at any subsequent time he enters the country he is to be held to have entered in violation of law and to be subject to the penalties of the act. It is said that such a construction of the act would lead to absurd results. That if a person was once refused admission on the ground of pauperism and subsequently became a wealthy man he could not enter the country except in violation of law. That might possibly depend upon the course he pursued, and upon whether a subsequent investigation duly made disclosed the fact that he was at the time of his second application entitled to admission. We do not need to consider that question until it arises. In the case at bar the relator allowed the original finding to stand unreversed so that each time he subsequently came into the country we must hold that he entered in violation of law.

[2] The relator took out his "first papers" for naturalization in September, 1911. That was after the date of his last arrival in this country which was in August of the same year. But it was prior to the issuance of the warrant for his arrest, which occurred as already stated, in July, 1913. The date of the "first papers" is, however, entirely immaterial. The act relates to the deportation of "aliens" and there is no question but that the relator was an "alien" when these proceedings were instituted. A declaration of intention to become a citizen does not make the alien a citizen. An alien remains such until naturalization is complete. Frick v. Lewis, 195 Fed. 693, 697, 116 C. C. A. 493; In re Moses (C. C.) 83 Fed. 995; Minneapolis v. Reum, 56 Fed. 576, 6 C. C. A. 31; Berry v. Hull, 6 N. M. 643, 30 Pac. 936.

[3] The relator claims that the proceedings for his deportation were not undertaken within the statutory period. He contends that the time within which he should have been deported, if properly subject to deportation, expired July 12, 1913, since his first entry after his exclusion was on July 12, 1910. The warrant of arrest was not served upon him within that period. This claim is not wholly devoid of support in the adjudicated cases. In Redfern v. Halpert, 186 Fed. 150, 108 C. C. A. 262, the Fifth circuit held that the three-year period begins to run from the date of the alien's first entrance into the country. A similar ruling was made in the Ninth circuit in United States v. Nakashima, 160 Fed. 842, 87 C. C. A. 646. We are not able to concur in this interpretation of the statute. It is contrary to our understanding of it as appears in our decision of Taylor v. United States, 152 Fed. 1, 81 C. C. A. 197, and in Ex parte Hoffman, 179 Fed. 839, 103 C. C. A. 327. While the case of Taylor v. United States, supra, was reversed by the Supreme Court in 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130, it has never been understood as having been reversed on that point. And the trend of the decisions is in accord with the view this court took in the cases above mentioned. Frick v. Lewis, 195 Fed. 693, 698, 116 C. C. A. 493. Prentis v. Stathakos, 192 Fed. 469, 112 C. C. A. 607; United States v. Williams (D. C.) 187 Fed. 470; United States v. Sprung, 187 Fed. 903, 905, 906, 110 C. C. A. 37; Sibray v. United States, 185 Fed. 401, 107 C. C. A. 483. The weight of authority therefore supports the proposition that the statutory period begins to run only from

the date of the last entry. In the case at bar the relator's last entry was made in August, 1911, so that his arrest was clearly within the statutory period. This makes it necessary to inquire into the validity of the warrant for the deportation of the relator which has been issued by the Secretary of Labor.

[4] In Bates & Gould Co. v. Payne, 194 U. S. 106, 109, 24 Sup. Ct. 595, 597 (48 L. Ed. 894), Mr. Justice Brown said:

"The rule upon this subject may be summarized as follows: 'That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive.'"

In that case an order of the Postmaster General was under review on appeal in an equity case. In the case at bar we have an order of the Secretary of Commerce and Labor, and the question comes up in a habeas corpus proceeding. But the principle is the same in both cases. We must, however, understand that the rule stated by Mr. Justice Brown presupposes that there was some evidence to support the finding. In the case at bar there must have been a hearing and some proof to support the charge contained in the warrant that the relator attempted to bring into the United States a woman or girl for an immoral purpose, to wit, concubinage. Without some evidence to support the charge, the Department of Commerce and Labor cannot rightfully issue its warrant of deportation and this court can order the discharge of the relator. If, however, there has been a proper hearing and there is any evidence to sustain the charge, this court has no right to consider the weight of the proof but must accept the decision of the Secretary of Labor as conclusive. See Frick v. Lewis, 195 Fed. 693, 116 C. C. A. 493. The exercise of the discretion of the Secretary of Labor, so far as it is authorized by law, is not subject to review in the courts. Sibray v. United States ex rel. Kupples, 185 Fed. 401, 107 C. C. A. 483. In United States v. Williams, 200 Fed. 538, 541, 118 C. C. A. 632, 635, we said:

"We think that some evidence must be presented to justify a judgment of deportation and that conclusions of law must have some facts upon which to rest. * * * The findings of these officials are practically conclusive upon questions of fact."

[5] The minutes of the hearing in June, 1910, before the Board of Special Inquiry appear in the record in this proceeding. The minutes of the hearing had on July 17, 1913, before the United States Immigration Inspector at Chicago are also in the record. All the testimony has been examined by us in order to determine whether there is evidence to support the proceeding. The warrant issued by the Secretary of Labor on March 7, 1913, states that:

"The said alien is a member of the excluded classes in that he has been convicted for or admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States."

There is nothing in the record which sustains this allegation. Illicit relations between unmarried persons have not been made a crime by the laws of the United States. And there is nothing in the record to show that such relations have been made a crime under the law of

Switzerland where the relations took place years before. Neither is there anything in the laws of the state of New York which makes such relations a crime. But the Supreme.Court has held that intended concubinage is a ground of exclusion. United States v. Bitty, 208 U. S. 393, 28 Sup. Ct. 396, 52 L. Ed. 543. The record shows that both the relator and the woman admitted that improper relations had existed between them at times in Switzerland, and that both denied that they had any immoral purpose in view in entering the United States. But notwithstanding their denials we think the testimony adduced was of such a nature as might lead to the belief that their relations were not in accord with their declarations. As long as there was some evidence to support the finding of the immigration officials, we cannot say that the order of deportation was invalid, even though we might regard the testimony as not sufficiently convincing. It is not within our province to weigh the evidence. The duty to do that is with the immigration officials and the Secretary of Labor, and the responsibility rests solely upon them, their decision being final if there is any evidence whatever to support it.

[6, 7] The relator asserts that the warrant of arrest is defective and that he is entitled to take advantage of the defect at this time as he did not have a fair hearing. It is not necessary that a warrant of arrest should have the formality and particularity of an indictment, although it is necessary that the alien should have sufficient information of the acts relied on to bring him within the excluded classes to enable him to offer testimony in refutation at the hearing directed to be had by the warrant of arrest. But this court held in .United States v. Williams, supra, that irregularities in the order of arrest do not affect the status of an alien held upon a warrant of deportation after a fair hearing. And in other cases it has been held that the fact that a warrant of deportation is based in part upon a charge not stated in the warrant of arrest, is not an objection when the alien has had a fair hearing on the charge. Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501, and cases cited.

We think that, as there has been a fair hearing and some evidence to support the conclusion reached by the immigration officials, we have no discretion and must affirm the order dismissing the writ.

The order is affirmed.