UNITED STATES ex rel. CAVANAUGH v. HOWE, Commissioner of Immigration.

(District Court, S. D. New York. October 9, 1916.)

1. HABEAS CORPUS ⬤⇒113(12)—SCOPE OF WRIT—REVIEW.
    Where an alien who was excluded from the United States on the ground that she was likely to become a public charge brought habeas corpus, the finding of the commissioner of immigration must be upheld if there is any evidence, however slight, to support his decision, for the weight of the evidence cannot be reviewed on habeas corpus, but, if there is no evidence to support his finding, the alien may be ordered released and admitted.

    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 114; Dec. Dig. ⬤⇒113(12); Appeal and Error, Cent. Dig. § 3400.]

2. ALIENS ⬤⇒54—ADMISSION TO UNITED STATES—PUBLIC CHARGE—EVIDENCE.
    On habeas corpus to secure the release of an alien excluded from the United States by the commissioner of immigration on the ground that she was likely to become a public charge, held, that there was no evidence to support the commissioner's finding; all the evidence tending to show that the alien was not likely to become a public charge.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬤⇒54.]

3. ALIENS ⬤⇒54—ADMISSION TO UNITED STATES—EXCLUSION.
    Where an alien was refused admission to the United States on the ground that she was likely to become a public charge, the question of whether she was immoral cannot be considered, nor is her immorality ground for sustaining the exclusion.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬤⇒54.]

At Law. Application by the United States, on relation of Hilda Rose Cavanaugh, for a writ of habeas corpus against Frederic C. Howe, Commissioner of Immigration at the Port of New York. Writ issued, and relator permitted to enter the United States.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward M. Stanton, Asst. U. S. Atty., and Jonah J. Goldstein, of New York City, for the immigrant.

MANTON, District Judge. This is an application for the release of Hilda Rose Cavanaugh, an immigrant from Great Britain, who was ordered deported by the Department of Labor. Born in Ireland, she spent much of her time in England and immigrated to this country once before, where she remained for some months, returning to England, and has now sought re-entry to this country. She has had full hearing before the commissioners, and, after an adverse decision, appealed to the Secretary of Labor at Washington, where the decision of the Board of Inquiry was affirmed and her deportation ordered.

[1] There were two grounds urged at the proceedings before the Board of Inquiry for her deportation: First, that of immoral character, since abandoned; and, the second, that she might become a public charge. She has been ordered deported upon the latter. The court, under the authorities, cannot disturb this finding if there is evidence, however slight, to support a finding that there is danger of the immigrant becoming a public charge. U. S. v. Ju Toy, 198 U. S. 260, 25 Sup. Ct. 644, 49 L. Ed. 1040; Ex parte Fong Yim (D. C.) 134 Fed. 938.

It was said in Ex parte Petterson (D. C.) 166 Fed. 539:

"A preliminary question has been suggested which must first be considered: Has this court authority in a habeas corpus case to examine the record of the proceedings before the immigrant inspector, for the purpose of ascertaining whether the Assistant Secretary of Commerce and Labor, in issuing his warrant for deportation, acted with respect to a matter over which he had jurisdiction? It is, of course, well settled by abundant authority that the writ of habeas corpus cannot be employed to perform the function of a writ of error or an appeal. There are, however, several recent decisions of the Supreme Court holding that the courts of the United States have jurisdiction to grant relief to a party aggrieved by any action by the head or one of the subordinate officials of a department, when the evidence adduced before such official, and upon which he assumes to act, is wholly uncontradicted, and shows beyond any room for dispute or doubt that the case in any view is beyond the statutes, and not covered or provided for by them. Gonzales v. Williams, 192 U. S. 1 [24 Sup. Ct. 177, 48 L. Ed. 317]; Amer. School of Mag. Heal. v. McAnnulty, 187 U. S. 94 [23 Sup. Ct. 33, 47 L. Ed. 90].

"Upon the authority of these cases—and many others might be cited—there can be no room for question that this court has authority to examine the record and the evidence upon which the Assistant Secretary of Commerce and Labor predicated his authority to issue his warrant for the deportation of the petitioner, for the sole purpose of ascertaining whether the evidence before that official, and upon which he assumed to act, showed beyond any room for dispute or doubt that this case is beyond the purview of the immigration statutes of the United States, and not covered or provided for by them."

But when there is nothing to support a charge such as the charge in question, the court may rightfully hold that the detention and deportation of the immigrant is an abuse of power. Frick v. Lewis, 195 Fed. 696, 115 C. C. A. 493.

In Gegiow v. Uhl, 239 U. S. 9, 36 Sup. Ct. 3, 60 L. Ed. 114, Judge Holmes said:

"The courts are not forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute, by enumerating the conditions upon which the allowance to land may

be denied, prohibits the denial in other cases. And when the record shows that a Commissioner of Immigration is exceeding his power, the alien may demand his release upon habeas corpus. The conclusiveness of the decisions of immigration officers under section 25 is conclusiveness upon matters of fact. This was implied in Nishimura Ekiu v. U. S., 142 U. S. 651 [12 Sup. Ct. 336, 35 L. Ed. 1146], relied on by the government. As was said in Gonzales v. Williams, 192 U. S. 1, 15 [24 Sup. Ct. 177, 180 (48 L. Ed. 317)]: 'As Gonzales did not come within the act of 1891, the commissioner had no jurisdiction to detain and deport her by deciding the mere question of law to the contrary.' Such a case stands no better than a decision without a fair hearing, which has been held to be bad. Chin Yow v. U. S., 208 U. S. 8 [28 Sup. Ct. 201, 52 L. Ed. 369]. See, further, Zaknaite v. Wolf, 226 U. S. 272 [33 Sup. Ct. 31, 57 L. Ed. 218]; Lewis v. Frick, 233 U. S. 291, 297 [34 Sup. Ct. 488, 58 L. Ed. 967]."

Bearing in mind these principles to which the court is confined in determining the questions involved on this application, I am of the opinion that the writ should be sustained and the immigrant released.

[2, 3] I have examined the testimony taken before the Board of Inquiry and do not find even slight evidence to support the finding which has resulted in the order of deportation on a charge of the danger of the immigrant becoming a public charge. The immigrant was apparently held or stopped in her passage to this country as a result of an anonymous letter written to the authorities, and which had to do with the morality of the immigrant and her relations with one Clarence D. Levy, with whom she had some sort of an association on her last visit. However meritorious this claim may have been, it is out of the case now, since the finding, as shown by the return, indicates that she is not being held for deportation because of this charge. I fear that uppermost in the consideration of those who have passed upon the case before has been an influence wielded against the applicant for admission because of her alleged relations with Levy. The Board of Inquiry properly held that there was no evidence to support the charge in view of what the record shows. Innuendo, surmise, or guess of immorality will not suffice. The case must therefore be considered within the principles of law herein referred to and upon the record, and that alone, to ascertain whether or not there is evidence, even slight, to hold the applicant for deportation.

It is regrettable that a reading of the testimony shows many contradictions and inconsistencies between the testimony of the immigrant and Levy. But the record fairly shows that the immigrant, 22 years of age, unmarried, and an actress by profession, arrived as a second-cabin passenger with $35 in American money and about 20 pounds in baggage. She had a friend in this country in Clarence D. Levy, whom she was going to visit, and whom, it appears later on in the testimony, she intended to marry. Her specialty on the stage was dancing and singing, and she also testified that she is a typist. Levy says he has an income of $7,000 a year which he inherited and real estate valued at $14,000, and that he is engaged in the business of appraising property, from which he derives an income of some $10,000 a year. He offered, on the hearing, to become bondsman in any amount the government may require, and this is permissible under the immigration law. There is no testimony in contradiction of these facts, and I cannot see how it can be said that this evidence is even slight evidence

of the immigrant being unable to support herself or to become a public charge. Much was said on the argument and in the memorandum submitted by the learned United States assistant attorney as to what the immigrant did on the occasion of her last visit here. I think, however, that that is not pertinent, for we are only interested in what she can or may do on the occasion of this arrival in this country. If Levy and the immigrant are honest in their intentions and Levy marries her, she has the prospect of comfort and luxury in this country. If she is a singer, dancer, and typist, she has the prospect of employment here, and, since she enjoys good health and is but entering into the stage of womanhood, I cannot see how she can become a public charge here. Her experience in the country before, where she lived for some months, would negative any such idea. While insinuations are made in an anonymous letter (letters which usually find a fitting place in the scrap basket) as to her intimacy with Levy while here before, I cannot see how that can be the subject of inquiry or influence the court's judgment now, in view of the return which indicates the one ground for which she is being detained. The fact that she has no relatives here should not weigh against her to the extent of excluding her, for she speaks the English language and perhaps finds herself in common with a great many other useful residents of the United States.

In the Gegiow Case, referred to above, two Russians who spoke only a foreign tongue, with $40 and $25, respectively, bound for Portland, Or., were admitted into the country against the finding of a similar Board of Inquiry. I think that this case comes well within the rule of the case just mentioned where it said:

"Such a case stands no better than a decision without a fair hearing which has been held to be bad."

In Frick v. Lewis, supra, the court said:

"Where there is nothing to support a charge, we agree that the department cannot rightfully issue a warrant to deport; for that would be a clear abuse of power."

I find nothing in the statutory enactment which specifies the amount an immigrant must have upon entry into this country, and under the particular circumstances of this case on the showing made by the immigrant, as to her ability to care for herself, if she fails in marriage with Levy, and particularly where she has not had the advantage of rule 20, that is to say, an opportunity to give a bond to insure the government against her becoming a public charge, I feel it my duty to sustain the writ and permit her to enter the United States.