UNITED STATES ex rel. PFEFER v. BELL.

(District Court, E. D. New York. February 19, 1918.)

1. CONSTITUTIONAL LAW ⊜83(2)—INVOLUNTARY SERVITUDE.
    Selective Draft Act May 18, 1917, c. 15, 40 Stat. 76, both as respects citizens and declarent aliens, is not in violation of Const. U. S. Amend. 13, as imposing involuntary servitude.

2. CONSTITUTIONAL LAW ⊜190—EX POST FACTO LAWS—WHAT ARE.
    As the Selective Draft Act is not an ex post facto law as to citizens, it cannot be deemed ex post facto legislation as to aliens; for, while Congress could not affect an alien's right to come into the country by a change thereafter in the requirements of admission, nevertheless in all other respects his status after entry is just the same as that of a citizen.

3. TREATIES ⊜11—REPEAL—CONFLICTING STATUTES.
    While Const. art. 6, cl. 2, declares that the laws of Congress and treaties are the supreme law of the land, treaties give way to a subsequent statute; hence treaties with foreign nations are repealed in so far as they are in conflict with the express provisions of the Selective Draft Act.

4. ALIENS ⊜1—NATURALIZATION—DECLARATION.
    A foreigner, holding only a declaration of intention, is still a subject of the foreign country.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5.** Constitutional Law ⬅➡70(3)—Separation of Powers—Authority of Courts—Validity.

The Selective Draft Act cannot be declared invalid in its operation as to declarant aliens who are still foreign subjects, on the theory that it is contrary to the public policy of the United States to recognize the right of any nation to impress into military service subjects of another nation, for the courts have no power to declare a law unconstitutional because it is in contravention with the so-called law of nations.

**6.** Habeas Corpus ⬅➡16—Remedy—Scope.

A declarant alien, certified into military service under the Selective Draft Act, may by habeas corpus raise the question of the propriety of his certification.

Habeas Corpus. Petition by the United States, on the relation of Abraham Pfefer, for writ of habeas corpus against Franklin J. Bell, as Commanding Officer of Camp Upton, Yaphank, Suffolk County, N. Y. Writ dismissed, and relator remanded.

Charles Recht, of New York City (Sidney R. Fleisher, of Brooklyn, N. Y., and Isaac A. Hourwich, of New York City, of counsel), for relator.

Melville J. France, U. S. Atty., of Brooklyn, N. Y., and Vine H. Smith, Asst. U. S. Atty., of New York City.

CHATFIELD, District Judge. The relator, Pfefer, is in the National Army at Camp Upton, in this district. He is a subject of Russia, who has taken out his first papers and has been drafted as a declarant. The facts shown by the petition and the return are not disputed.

The relator stated before the local board that he was an alien who had filed a declaration of intention. The board on these facts included him within the eligible class, and he was drafted in accordance with the procedure of the law. Upon this application the only question is based upon a general claim that the local board had no jurisdiction over the relator under the Draft Law. The law is alleged to be unconstitutional in those provisions which include aliens who have filed declarations of intention to become citizens.

[1] The relator argues that as an alien he cannot be lawfully impressed into the military service of this country, of which he is a resident, at least until after opportunity has been given to leave the United States. The relator claims that the Selective Service Law must be tested by the law of nations; in other words, that Congress was bound by international law to exclude all aliens in enacting a statute which was otherwise within its province. The relator further claims that the Selective Service Law is ex post facto, in that he was admitted to the country under certain agreements as to international law, which would be violated by a change in his condition through acts of Congress. The relator also alleges that he is deprived of his liberty without due process of law, because he has been impressed into servitude in violation of the Thirteenth Amendment of the Constitution.

The last question has been disposed of by the Supreme Court in the case of Arver v. United States, 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. ——, decided January 7, 1918, in so far as citizens are concern-

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed, since the servitude claimed is not in its nature different, when we consider the drafting of an alien in the army, than when a citizen is drafted to serve against his will.

[2] The charge that the law is ex post facto is evidently, like the question of servitude, of no force when separated from the proposition that an alien is free from the provisions of the law. A citizen, born before the law was enacted, might as well object that the law was ex post facto as to his contract rights, if Congress had power to enact the law in general. An alien comes to this country in the enjoyment of a privilege which can be terminated, except in so far as his own nation, or his rights as a subject of that nation, may protect him from such law as may be passed after his arrival. Congress could not affect his right to come into the country by a change thereafter in the requirements of admission, but in all other respects his status may be changed within the constitutional powers of Congress, just as those of a citizen. Moore's International Law, p. 67; Lem Moon Sing, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082.

[3] A number of cases have been decided since the passage of the Selective Service Law, holding that treaties with foreign nations have been repealed in so far as they were contrary to the definite language of the Selective Draft Act. On the Application of Victor Larrucea (D. C.) 249 Fed. 981, for writ of habeas corpus, Southern District of California, Southern Division in the Matter of Troiani v. Heyburn (D. C.) 245 Fed. 360, Eastern District of Pennsylvania, and in the case of Ex parte Hutflis (D. C.) 245 Fed. 798, it has been held that the act in question expressly suspends both laws and treaty rights in conflict therewith, except as such treaty rights may be re-established with the approval of the Senate, through the Department of State. These cases are in accord with the previous decisions. By article 6, clause 2, of the Constitution, the Constitution, the laws of Congress, and treaties made under the authority of the United States, are the supreme law of the land. But that law is based upon the latest enactment, whether by statute or treaty. Treaties must be held by the courts to give way to an express subsequent statute. The Kestor (D. C.) 110 Fed. at page 448; The Nereide, 9 Cranch (13 U. S.) at page 421, 3 L. Ed. 769; The Cherokee Tobacco, 11 Wall. (78 U. S.) at pages 620 and 621, 20 L. Ed. 227; Head Money Cases, 112 U. S. at page 598, 5 Sup. Ct. 247, 28 L. Ed. 798; Whitney v. Robertson, 124 U. S. at page 194, 8 Sup. Ct. 456, 31 L. Ed. 386; United States v. Lee Yen Tai, 185 U. S. at pages 220 and 221, 22 Sup. Ct. 629, 46 L. Ed. 878.

[4, 5] Nor does the contention that international law forbids the enactment by Congress of a statute requiring aliens to serve in the army give to the courts of the United States any authority to set aside nor to restrain Congress from enacting a statute violating the so-called rule, if it sees fit so to do.

The relator has cited a number of cases and opinions promulgated during the last century, in which it has been stated that it was contrary to the policy of the United States government to recognize the right of any nation to impress into military service subjects of another nation. See 4 Moore's International Law, p. 51. It is not doubted that

a person holding only a declaration of intention is still a subject of a foreign country. In re Moses (C. C.) 83 Fed. 995; United States v. Uhl (D. C.) 211 Fed. 628; Frick v. Lewis, 195 Fed. 693, 115 C. C. A. 493.

But under present conditions the arguments which have been heretofore urged against impressing the citizens of a neutral into military service do not apply with the same force and scope in this war, where the various nations whose treaties have been repealed in this respect by the Selective Draft Law are engaged in military service for their own existence, as allies or friends of the United States. Such a question can be determined only by agreement between the nations as to whether one country shall be allowed to draft the men of other nationalities within its borders. In a common cause, the act of one nation, in the favor of all, is not an act of aggression against the United States, nor against any other country, and is not analogous to capture of citizens by a foreign country in time of peace, or by a belligerent, for its own military purposes, in war against another country. But the rules of international law, like those of existing treaties or conventions, are subject to the express acts of Congress, and the courts of the United States have not the power to declare a law unconstitutional, if it be within the authority given to Congress as to legislation, even though the law itself be in contravention of the so-called law of nations. The Nereide, supra; Respublica v. De Longchamps, 1 Dall. (1 U. S.) 111, 1 L. Ed. 59; The Scotia, 14 Wall. (81 U. S.) 170, 20 L. Ed. 822; Opinions of the Attorney General, vol. 10, at page 521, and also the cases hereinbefore cited.

[6] This question can be raised by habeas corpus (Head Money Cases, supra, 112 U. S. at page 598, 5 Sup. Ct. 247, 28 L. Ed. 798; Re Ah Lung [C. C.] 18 Fed. 28); but the issue must be resolved in favor of the government when the relator is held under a specific act of Congress as in the present case.

No other point being made out as to which the decision of the authorities under the draft law was not after fair hearing and as to which their decision was not final (Angelus v. Sullivan, 246 Fed. 54, —— C. C. A. ——), the writ will be dismissed, and the relator remanded to the military authorities.