## UNITED STATES ex rel. LISAFELD v. SMITH, Immigration Inspector, et al.

(District Court, W. D. New York. August 26, 1924.)

No. 2576.

I. Aliens ⬤⟿40—Congress has power to order deportation of undesirable aliens.

Congress has preliminary power to order the deportation of undesirable aliens domiciled in the United States, and to fix the standard for determining who are within that class.

2. Aliens ⬤⟿54—Grounds for review of deportation proceedings.

If proceedings for deportation before the Department of Labor or its subordinate officers are shown to have been unfair or lacking in observance of the material elements of due process of law, or if errors of law were committed, they are reviewable by the courts by writ of habeas corpus.

3. Aliens ⬤⟿53—Member of Communist party held subject to deportation.

An alien, who admits his membership in the Communist party and his belief in its principles, must be held to believe in and advocate the overthrow by force or violence of the government of the United States, in accordance with the avowed purposes of that party as set forth in its manifesto and constitution, and is subject to deportation under Act Oct. 16, 1918, § 1, as amended by Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 4289¼b[1]).

4. Aliens ⬤⟿54—Deportation of alien; "country whence he came."

The provision of the immigration statutes, requiring that a deported alien be returned "to the country whence he came," means the country of his nativity or citizenship, and where his native place has, since the issuance of a warrant for his deportation, from causes due to the war, been included within the territory of a new or different country, the warrant may be corrected accordingly.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Country Whence He Came.]

**5. Aliens ⬳54—Circumstances may excuse delay in execution of order of deportation.**

While an order of deportation must be executed within a reasonable time, it is not void because of delay caused by unsettled conditions in Europe, due to the World War.

Habeas Corpus. Petition by the United States, on relation of Stephen Lisafeld, against Shirley D. Smith, Immigration Inspector in Charge at Buffalo, N. Y., and others, for writ of habeas corpus. Denied.

Irving M. Weiss, of Buffalo, N. Y. (Eustace Reynolds, of Buffalo, N. Y., of counsel), for petitioner.

Leland G. Davis, Asst. U. S. Atty., of Buffalo, N. Y., for respondents.

HAZEL, District Judge. [1, 2] It is firmly established that Congress has preliminary power to order the deportation of undesirable aliens domiciled in the United States. It has the power, for example, to direct the deportation of any alien who believes in or advocates the overthrow by force or violence of the government of the United States, or of all forms of law, or any aliens who disbelieve in, or who are opposed to, all organized government. Act Cong. Oct. 16, 1918, as amended June 5, 1920 (Comp. St. Ann. Supp. 1923, § 4289¼b[1]); Lauria v. U. S. (C. C. A.) 271 Fed. 261. And the Department of Labor is specifically required to perform the duties imposed in that particular. If, however, a proceeding pending before it, or before a subordinate officer thereof, is shown to be unfair or lacking in due observance of the material elements of due process of law, or if errors of law were committed in the deportation of an alien, the federal courts are empowered by writ of habeas corpus to inquire into any asserted unlawful detention.

[3] The record of the proceeding of the government against the relator before the Secretary of Labor is before me, and it appears that there was evidence to support the finding and conclusions that the relator was a native of Klopodia, located in Hungary (now Jugo-Slavia), and entered the United States in 1912. He voluntarily admitted, in answer to questions propounded to him by the inspector, that he had joined the Communist party at Buffalo and had made small contributions thereto in the way of dues; his application of membership having been made July 28, 1919. At the time of his arrest he had a membership card showing that he was connected with the central branch of the organization. He frequently attended lectures and was familiar with the programs and manifestoes of the Communist party. He was asked whether he was in accord with the teachings and beliefs of its manifestoes and constitution, and replied that he was.

It is evident from his direct examination that he was a believer in the declarations and purposes of the Communist party of America, and therefore it may be presumed that the acceptance of its announced methods of revolutionary massed action to accomplish the desired result was understood by him. No other conclusion can in fairness be reached, notwithstanding his denial on cross-examination that he did not believe in the overthrow of the government by force or violence to carry out the teachings of the manifestoes of the Communist party. The facts have been determined against him by the Secretary of Labor, and his decision must be regarded as final by this court. A fair and impartial summary hearing was accorded him, and he was represented by counsel. The declarations and manifestoes of the Communist party, showing its object and purpose, are, in view of his own testimony, binding upon him, and are within the contemplation of the act. Skeffington v. Katzeff (C. C. A.) 277 Fed. 129; Antolish v. Paul (C. C. A.) 283 Fed. 957. His declared adherence to the principles of the Communist party and his asserted belief in its teachings show conclusively that he is an undesirable alien and subject to deportation.

[4] On this hearing it is urged in his behalf that the warrant of deportation was and is a nullity, in that it fails to comply with the provisions of the statute with relation to his removal to the country from whence he came. The original warrant directed that he be returned to Hungary, and the government now, as appears by the warrant dated September 13, 1924, seeks to deport him to his home in Jugo-Slavia. The statute (section 20, Act Feb. 5, 1917 [Comp. St. Ann. Supp. 1923, § 4289¼k]) requires the deportation of an alien, at the option of the Secretary of Labor, to the country whence he came, or to the foreign port at which he embarked for this country. It is not enough to merely direct return to the country "from whence he came." Such a direction, without naming the particular place, would be too indefinite, and would not be a fair compliance with the deportation provision. Ex parte Callow (D. C.) 240 Fed. 212.

The relator admittedly could not be deported to Jugo-Slavia under the original warrant of direction of return to Hungary, but the intention of Congress in the use of the phrase "return to the country from whence he came" unquestionably requires his deportation to the country of his nativity or citizenship. It was so held in Frick v. Lewis, 195 Fed. 693, 115 C. C. A. 493. His native place or commune is Klopodia, in the township of Verseez, county of Temesvar, Hungary, and since the issuance of the original warrant the boundary lines of Hungary, owing to the vicissitudes of war and actions of the Peace Conference at Paris, have been altered, first becoming a part of Roumania, and later of the kingdom of Jugo-Slavia, which now includes within its territory the particular native place of the relator. The new warrant of deportation issued since the hearing before me directs his return thereto, and Jugo-Slavia has issued the necessary passport. It was proper to correct the original warrant, or to issue another in its place, to effectuate the conclusion of the Secretary of Labor. Ex parte Yabucanin (D. C.) 199 Fed. 365; Ex parte Callow, supra.

[5] It was also contended by the relator that the original warrant was void because of delay. It is, of course, intended and required that the decree of deportation be executed within a reasonable time, a term that obviously varies with the circumstances. Judicial notice is taken of the World War and, moreover, that for some time after the Armistice, opportunities for traveling in the war-stricken countries were limited. Procurement of necessary passports was difficult, especially from countries whose boundary lines were in dispute. Owing to the conditions, no passport to execute the original warrant could be obtained. Both Hungary and Roumania refused to receive the relator owing to their uncertainty as to whether they had jurisdiction over the native place of the relator; but finally Klopodia was included in the territory of Jugo-Slavia and a passport promptly issued on request of the United States government. Aside from this, the relator himself moved for rehearing, which was granted after the original warrant issued, and then again, until the case of Skeffington v. Katzeff, supra, was decided. I find there was no dilatoriness on the part of this government to void the warrant.

The writ of habeas corpus is dismissed, and the relator remanded to custody under the executive warrant for his deportation to Jugo-Slavia.